FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

98 JAN 16 PM 3: 15

U.S. DISTRICT COURT
N.D. OF ALABAMA

DELBRA KERLEY,             }
                           }
     Plaintiff,            }
                           }   CIVIL ACTION NO.
     vs.                   }
                           }   CV-96-AR-0994-S
GOODYEAR TIRE & RUBBER     }
COMPANY,                   }
                           }
     Defendant.            }

ENTERED

JAN 1 6 1998

### MEMORANDUM OPINION

The court has before it the motion of defendant, Goodyear Tire & Rubber Company ("Goodyear"), for summary judgment in the above-entitled action. Plaintiff, Delbra Kerley ("Kerley"), a black female employed at defendant's radial manufacturing facility located in Gadsden, Alabama (the "Gadsden radial plant"), alleges that Goodyear violated the Civil Rights Act of 1964, *as amended*, the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981, and 42 U.S.C. § 1981a by discriminating against her with respect to the terms and conditions of her employment because of her race, by subjecting her to hostile environment sexual and/or racial harassment, and by retaliating against her for reporting said harassment. In addition, Kerley alleges tort claims under Alabama law for intentional infliction of emotional distress and negligent hiring and training. For the reasons set out more fully below, the

court concludes that summary judgment is appropriate on all but Kerley's hostile environment claim.

## I. *Pertinent Undisputed Facts*

Kerley began working as a laborer at Goodyear's Gadsden radial plant in September, 1976. Complt. at ¶ 7. Over the course of her employment with Goodyear, she has had at least four "Area Managers" or supervisors — Gene Payne, Wallace Chapman, Bill Edwards ("Edwards"), and Ray Gresham ("Gresham"). Kerley Dep. at 26. With the exception of Edwards, Kerley claims that she got on "very well" with each of her supervisors. Id. at 26-27.

In August, 1995, Kerley was assigned to the position of "Tend Conveyor Unit and Sort Minispares." Id. at 26. At this time, Gresham was her Area Manager. Id. at 42. In this position, Kerley is responsible for monitoring the complex conveyor system that moves tires from the "Cure Presses" to "Final Finish." Id. at 33-34; Def's Exh. 1 to Kerley Dep. Her duties include clearing any obstructions in the conveyor system, removing minispares from the conveyor system, and sorting and loading minispares onto trucks. Id. at 30-31. Of the approximately thirty (30) employees in her work area, Kerley is the only employee assigned to monitor the conveyor system.

2

Gresham Dep. at 40.

On August 10, 1995, Kerley left her work area at 3:00 p.m. to take one of her regularly scheduled breaks.[1] Id. at 56. Kerley concedes that she left for her break before the employee assigned to relieve her had arrived. Id. at 68. As a result, the conveyor system in Kerley's work area went unmonitored for a short period of time. At some point while Kerley was on her break, tires became jammed in the conveyor system in her work area. Id. at 49. Wayne Vice ("Vice"), an Engineering Supervisor who is responsible for a separate department, discovered the jammed tires and cleared the obstruction. Vice Dep. at 43. Vice reported the incident to Gresham. Pl's Exh. 2 to Gresham Dep. After Kerley returned from her break, Gresham informed her that the conveyor system had jammed in her absence and that Vice had complained about the incident. Kerley Dep. at 79-80. He also advised Kerley that, from then on, she was not to go on break without first being relieved. Id.

Shortly after Gresham spoke with Kerley, Vice confronted her about the problem on the conveyor system. Id. at 84. Kerley claims that he told her, "I'm tired of doing your god-damned job." Id. She also claims that Vice went on to say, "Get off

---

[1] During the course of Kerley's twelve-hour shift, she is allowed to take five, regularly scheduled breaks. Id. at 53-55.

3

your fucking ass and start doing your fucking job." Id.

Kerley immediately reported this altercation with Vice to Gresham, who had her speak with Business Center Manager, Mike Nunn ("Nunn"). Id. at 103. During Kerley's meeting with Nunn, Vice entered the room and apologized to her for his behavior. Id. at 108. Nunn advised Kerley that, if she was not satisfied with Vice's apology, she should talk with Kelly Southworth ("Southworth"), Goodyear's manager for "personnel and EEO" at the Gadsden radial plant. Id. at 109; Southworth Dep. at 16-17.

On or around August 11, 1995, Kerley met with Southworth to report the altercation with Vice. Id. 117-19. Following her meeting with Kerley, Southworth conducted an immediate investigation of the incident, which included interviewing Kerley, Vice, Gresham, Nunn, and several other employees. Southworth Dep. at 60-62. As a result of this investigation, Vice was suspended for seven (7) days without pay. Id. at 80. Vice's suspension came within one week of the altercation with Kerley. Kerley Dep. at 148-49.

As a result of the Vice incident, Kerley's union filed a grievance with Goodyear. Def's Exh. 5 to Kerley Dep. In its grievance, the union claimed that the Vice incident was a violation of the labor agreement between the union and the company. Id. Kerley later asked the union to withdraw the

4

grievance. Kerley Dep. at 147. On August 30, 1995, she filed a charge of sex and race discrimination with the Equal Employment Opportunity Commission ("EEOC"). This lawsuit followed.

## II. *Summary Judgment Standard*

Rule 56 states in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Rule 56(c), Fed.R.Civ.P. In addition, the Eleventh Circuit has observed that "[s]ummary judgment is appropriate where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1061 (11th Cir. 1994). Goodyear has invoked Rule 56.

## III. *Discussion*

As an initial matter, the court notes that Kerley makes no detectable effort to justify her claim for disparate treatment regarding the terms and conditions of her employment, her claim for retaliation, her claim for intentional infliction of emotional distress, or her claim for negligent hiring and training. Given that Goodyear attacks each of these claims in

5

its initial brief in support of its motion for summary judgment, Kerley failure to argue in defense of these claims is significant. As the Eleventh Circuit has observed:

> Indeed, "[t]here is no burden upon the district court to distill every potential argument that could be based upon the material before it on summary judgment. Rather the onus is upon the parties to formulate arguments; **grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.**"

Lyes v. City of Riviera Beach, Fla., 126 F.3d 1380, 1388 (11th Cir. 1997) (emphasis supplied) (quoting Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir.), cert. denied, ___ U.S. ___, 116 S.Ct. 74 (1995)). Therefore, the court concludes that Kerley's failure to support her claim for disparate treatment regarding the terms and conditions of her employment, her claim for retaliation, her claim for intentional infliction of emotional distress, and her claim for negligent hiring and training upon Rule 56 challenge constitutes an abandonment of these claims. Accordingly, Kerley's said claims are due to be dismissed, leaving her hostile environment claim as the only claim to be discussed.

### *Kerley's Hostile Environment Claim*

As noted, Kerley alleges that Goodyear subjected her to hostile environment sexual and/or racial harassment. According to the Eleventh Circuit:

> "Hostile environment [racial] harassment occurs when an

6

employer's conduct 'has the purpose or effect of unreasonably interfering with an individuals's work performance or creating an intimidating, hostile, or offensive environment.'" (Citations omitted). Title VII is violated "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment.'" (Citations omitted). The harassing conduct must create **both** an **objectively** hostile environment — one "that a reasonable person would find hostile or abusive" — and a **subjectively** hostile or abusive environment — one that "the victim subjectively perceive[s] . . . to be abusive."

***

An employer can be either directly or indirectly liable for its employee's sexual [or racial] harassment. Direct liability lies when the employer "knew, or upon reasonably diligent inquiry should have known, of the harassment and failed to take immediate and appropriate corrective action." (Citation omitted). An employer is indirectly liable for hostile environment sexual [or racial] harassment in two situations: "(1) when a harasser is acting within the scope of his employment in perpetrating the harassment; and (2) when a harasser is acting outside the scope of his employment, but is aided in accomplishing the harassment by the existence of the [employment] relationship." (Citation omitted). The harasser acts within the scope of his employment only when he takes the harassing actions to accomplish one of the employer's objectives or when the employer "explicitly or implicitly authorized . . . such harassment." (Citation omitted). The harasser is aided by the existence of the employment "only if the harassment is accomplished by an instrumentality of the [employment] or through conduct associated with the [employment].

Fleming v. Boeing Co., 120 F.3d 242, 245-46 (11th Cir. 1997)

(emphasis supplied).

Kerley predicates her hostile environment claim on a number of allegedly sexual and/or racial incidents, including her altercation with Vice. However, as Goodyear correctly observes,

7

the Vice incident cannot serve as the basis for a hostile environment claim. Even if the Vice incident were found, either standing alone or in conjunction with other events, to constitute hostile environment harassment, the record clearly indicates that the company took prompt, remedial action once it knew of Vice's alleged offensive conduct. There is no evidence that Kerley had any further problems with Vice. These facts eliminate the possibility of Goodyear having any direct liability for Vice's conduct. See id. at 264-47 (concluding employer not directly liable for alleged harassment where it took "immediate and appropriate corrective action"). Similarly, the record evidence precludes the possibility of Goodyear having any indirect liability for the Vice incident. Vice's behavior toward Kerley cannot be seen as an attempt to accomplish any of Goodyear's objectives, and nothing in the record suggests that the company authorized the alleged harassment. Moreover, Vice never used any authority conferred on him to facilitate his alleged harassment of Kerley. Indeed, as it is undisputed that he had no supervisory authority over Kerley, he could not have done so. Thus, if Kerley's hostile environment claim is survive summary judgment, she must create a jury issue based on events other than the Vice incident.

Along with several other incidents, Kerley claims that she

8

was harassed by a white male co-worker, Melvin "Wormy" Nelson ("Nelson"). In her deposition, Kerley described Nelson's behavior as follows:

> And [Nelson] would always would joke with me like he wanted to take me out. And I told him, you know, I would tell him all the time to leave me alone, because we always, you know, would [sic] getting into an argument. **And he would make statements and everybody in the department was aware of what was going on because they heard it.** He would always say that I better hope the slavery days don't come back. Because if the slavery days ever come [sic] back I would be his wench and I would be his footwarmer or whatever you call it. And I told him over my dead body. And then he would always tell me that if I was his slave — if I was his woman or whatever that he would take care of me if was a house slave, I'd be in the house and would never go out and then he would make statements like if I ever date him just one time — if I ever went out with him just one time that I would throw rocks at black men. I would never want to be with another black man. And then he would bark [like a dog] at me every day when I walked through the department.

Kerley Dep. at 222-24 (emphasis supplied). According to Kerley, Nelson "always" treated her in this way for "several months." Id. at 222, 224. A careful review of the record reveals that Nelson's alleged harassment lasted for at least eight months.[2]

Although Kerley's testimony regarding Nelson's behavior is somewhat unspecific, it establishes the existence of a work environment this is sufficiently hostile as a result of

---

[2] Kerley's deposition testimony suggests that Nelson's harassment began while Area Manager Bill Edwards was her supervisor and ended on or around the date of the Vice incident. Kerley Dep. 232-33, 224. The record indicates that Edwards last worked at Goodyear in January, 1995. Mayfield Aff. at ¶ 2. The Vice incident occurred on August 10, 1995. Thus, the harassing conduct attributed to Nelson lasted for at least eight months — from January to August, 1995.

9

plaintiff's race and sex to allow this claim to survive summary judgment. The testimony describes a prolonged pattern of behavior that contains offensive sexual and racial overtones, as well as unwelcome sexual advances, and that any reasonable person would find abusive. It is clear that Kerley subjectively perceived Nelson's behavior as abusive. Finally, given that Kerley alleges in her complaint that this offensive behavior caused her to suffer mental distress and emotional pain and anguish, there is evidence that Nelson's conduct affected a term and condition of her employment. Complt. at ¶ 11; see Harris v. Forklift Systems, Inc., 114 S.Ct. 367, 370-71 (1993)(holding that hostile environment harassment need not "seriously affect [an employee's] psychological well-being" to be actionable); Henson v. Dundee, 682 F.2d 897, 901 (11th Cir. 1982) (finding psychological well-being to be a term, condition, or privilege of employment within meaning of Title VII). Thus, as per Fleming, the court concludes that Kerley has articulated a *prima facie* case for hostile environment sexual and/or racial harassment.

Perhaps in anticipation of this conclusion, Goodyear argues that, even if Nelson's conduct was severe and pervasive enough to constitute hostile environment harassment, it can have no liability for his conduct because, as Kerley never complained about it, the company neither knew nor should have known of the

10

alleged harassment. This argument is not well taken. Kerley's deposition testimony reveal that, for at least some portion of the time that Nelson "always" harassed her, Edwards was her supervisor and that he "heard it every day." Kerley Dep. at 232-33. According to the company's "Non-Discrimination Personnel Policy," hostile environment harassment, including unwelcome sexual advances, is prohibited, and "*[a]ll managers* are charged with the responsibility for compliance with [this policy] in their departments." Pl. Exh. 3 to Southworth Dep. at 1, 3 (emphasis supplied). However, there is no evidence that Edwards took any steps to stop Nelson's conduct. In fact, there is evidence to suggest just the opposite — that Edwards condoned Nelson's behavior and perhaps even participated in similar behavior himself. *See* Kerley Dep. at 216-17 (testifying that there were "a couple of instances" when Edwards "put his arm around [Kerley's] waist" and told her "how he heard black women were good in bed"). Thus, there is a disputed issue of material fact as to whether Goodyear, through one of its managers, knew of Nelson's alleged harassment and failed to take remedial action. As a result, the court concludes that summary judgment is inappropriate on Kerley's hostile environment claim.

## IV. *Conclusion*

The court will enter a separate and appropriate order in accordance with this memorandum opinion.

DONE this ___16th___ day of January, 1998.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

12